IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:21-cv-248

| | |
|---|---|
| Ravi D. Patel,<br><br>            Plaintiff,<br><br>v.<br><br>Sheriff Steve Whisenant, Sheriff of Burke County, North Carolina, Burke County Sheriff's Office,<br><br>            Defendant. | **DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATIONS OF STEVE WHISENANT AND SEAN PERRIN IN SUPPORT OF BRIEF** |

## I.    INTRODUCTION

This is a Complaint filed by former Burke County Sheriff's Office detention officer Ravi Patel against Burke County Sheriff Steve Whisenant, after Patel was fired for assaulting an inmate at the Burke County Jail on January 27, 2021. [Document 1].

Patel alleges that Sheriff Whisenant discriminated against him under Title VII of the Civil Rights Act of 1964 based on his race and national origin. [Document 1, ¶¶ 1, 16-23].

As will be demonstrated, Patel was not subjected to discrimination. Sheriff Whisenant fired Plaintiff because he assaulted a jail inmate, an act for which he was criminally charged by the State of North Carolina.

1

## II. STATEMENT OF THE FACTS

### A. SHERIFF WHISENANT HIRES RAVI PATEL AND PROMOTES HIM SEVERAL TIMES

Ravi Patel, an Asian male of Indian descent, was hired on August 22, 2016, as a detention officer at the Burke County Jail ("Jail") by Burke County Sheriff Steve Whisenant. [Document 1, ¶¶ 4, 5]; Whisenant Dec. ¶ 2.[1] The role of a detention officer is to maintain safety and security of inmates at the Jail. Whisenant Dec. ¶ 2. All detention officers are required to obtain a certification through the North Carolina Sheriffs' Education and Training Standards Commission. *Id*. Patel failed this certification course three times. *Id*. However, Sheriff Whisenant believed that Patel had to ability to become certified as a detention officer, and gave him several opportunities to attend the detention certification course. *Id*. Ultimately, Patel successfully completed this certification on April 5, 2017. *Id*.

After his successful completion of the detention officer course, Patel was promoted by Sheriff Whisenant two times, both of which involved salary increases. *Id*. at ¶ 3. Patel was promoted on November 18, 2017, from detention officer to corporal. *Id*. Patel was promoted again on November 16, 2019, from corporal to sergeant. *Id*. at ¶ 4; [Document 1, ¶ 6]. As a sergeant, Patel was responsible for a shift supervising inmates and employees at the Jail. [Document 1, ¶ 7].

---

[1] "Whisenant Dec." refers to the declaration of Steve Whisenant, Exhibit 1 to this Brief.

2

On January 25, 2020, Sheriff Whisenant temporarily moved Patel into a lieutenant position due to the current lieutenants at that time being on extended medical leave. Whisenant Dec. ¶ 5. Patel's salary was also temporarily increased until the lieutenants returned from medical leave. *Id*.

In addition to his promotions and salary increases, Sheriff Whisenant honored Patel several times during his employment. *Id.* at ¶ 6. Patel was awarded the Burke County Sheriff's Office Officer of the Month in April 2018, and the Burke County Sheriff's Office Detention Officer of the Year for 2018. *Id.* On February 27, 2020, Sheriff Whisenant awarded Patel a "Meritorious Award" for his dedication to the Sheriff's Office. *Id*.

### B. **ON JANUARY 27, 2021, RAVI PATEL ASSAULTS A JAIL INMATE**

On January 27, 2021,[2] Patel and coworkers Cobie Sigmon and Warren Blake were supervising inmates as the inmates gave each other haircuts. [Document 1, ¶ 8]; Whisenant Dec. ¶ 9. Inmates James Robinson and Christopher Shell, "high priority" inmates, got close to Plaintiff and his co-workers, so Plaintiff took "all hair-cutting people and instruments out of the room." [Document 1, ¶ 8]; Whisenant Dec. ¶ 10. Robinson became belligerent, and started threatening Plaintiff. *Id*.

As a result of these threats, Plaintiff decided that Robinson and Shell should

---

[2] The Complaint alleges that this occurred on January 17, 2021, but also alleges that it occurred on January 27, 2021. [Document 1, ¶ 13]. The incident actually occurred on January 27, 2021. Whisenant Dec. ¶ 7.

3

be taken to isolation. [Document 1, ¶ 8]; Whisenant Dec. ¶ 10. During the trip to the isolation cell, Robinson continued to curse and berate Patel. [Document 1, ¶ 8]. As Patel had been spit on before, when Robinson got close to him, Plaintiff pushed Robinson away to make sure he did not spit on Plaintiff or his coworkers. *Id*. Plaintiff then took Robinson down to the floor, and Robinson sustained "a scratch on his face when his face came into contact with the wall." *Id*. at ¶ 12. In the past, Plaintiff had reported Robinson's earlier threats to his superior, Lt. Bill Viggers, but nothing was done to Robinson. *Id*. at ¶ 13.

On January 30, 2021, Sheriff Whisenant received a Facebook message from Robinson's grandmother, Rebecca Smith, who claimed that Robinson was assaulted by an officer at the Jail on January 27, 2021. Whisenant Dec. ¶ 7. Sheriff Whisenant immediately contacted Major Banks Hinceman and Captain Greg Huntley and asked them to investigate this incident. *Id*. Major Hinceman and Captain Huntley reviewed use of force statements and video for this incident and provided Sheriff Whisenant with the statements and video. *Id*. at ¶ 8. Sheriff Whisenant reviewed the statements and video. *Id*.

Sheriff Whisenant reviewed video evidence of the incident which showed Officers Sigmon and Blake standing with Robinson in front of an isolation cell while Robinson was handcuffed behind his back. *Id*. at ¶ 11. Patel was escorting Shell to a different isolation cell and was moving behind Officers Sigmon and Blake. *Id*. Patel

4

left Shell and grabbed Robinson from behind around the neck with both hands. *Id*. Patel then slammed Robinson's head into the cell door and wall. *Id*. Patel then moved to put Robinson into a headlock with his arm. *Id*. Patel then slammed Robinson to the ground. *Id*. Officers Sigmon and Blake helped pick up Robinson and placed him in the isolation cell. *Id*. Robinson suffered a cut above his eye and was treated by medical staff. *Id*.

On February 2, 2021, Captain Huntley determined that the use of force was not justified and the video contradicted Patel's use of force statement. *Id*. at ¶ 12. Patel was placed on administrative leave with pay on February 2, 2021. *Id*. at ¶ 13. The Sheriff's Office conducted a further investigation, including interviewing Patel on February 5, 2021. *Id*. Patel alleged that Robinson was using racial slurs against him, and he thought Robinson was going to spit on him based upon movements that Patel claimed Robinson made. *Id*. Sheriff Whisenant reviewed the video again and did not see any movement from Robinson that indicated he was going to spit on Patel. *Id*.

Sheriff Whisenant fired Patel on February 5, 2021, because he assaulted and injured an inmate. *Id*. at ¶ 14. Patel also violated the Sheriff's Office Use of Force Policy, 4.18, which provides that, "No deputy or detention officer is allowed to use physical force greater than reasonably appears necessary." *Id*. On February 2, 2021, Sheriff Whisenant contacted the State Bureau of Investigations ("SBI") but did not

5

play a role in its investigation. *Id.* ¶ 16. The SBI recommended that an assault charge be filed against Patel. *Id.* The Burke County District Attorney agreed, and on March 23, 2021, the SBI obtained a criminal summons from the Burke County Magistrate charging Patel with assault. *Id.* This charge was ultimately dismissed.

Patel subsequently brought this action, asserting claims of race discrimination and national origin discrimination under Title VII, claiming that he did not violate Sheriff's Office policy, and that other similarly situated white employees engaged in similar and more offensive conduct without being fired. [Document 1, ¶¶ 15, 17, 21].

## III. ARGUMENT

### A. PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION

Title VII prohibits an employer from "dishcharg[ing] any individual…because of such individual's race… or national origin." 42 U.S.C. § 2000e-2(a)(1). Under this statute, Plaintiff can demonstrate discrimination through direct proof of discrimination or using the burden-shifting method set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). *Jenks v. City of Greensboro*, 495 F.Supp.2d 524, 527 (M.D.N.C.) (2007).

Plaintiff cannot demonstrate discrimination through any direct proof. When asked in an interrogatory to "Identify all actions taken by employees of the Burke

6

County Sheriff's Office that you contend constituted discrimination based upon national origin", Plaintiff answered "Multiple inmates had verbally harassed Plaintiff by saying 'You need to go back to your own country.'" Exhibit 2, Interrogatory Response Number 9.[3] When asked to "Identify all actions taken by employees of the Burke County Sheriff's Office that you contend constitute discrimination based upon race," Plaintiff claims that he was just treated differently because of his race without identifying any direct proof of discrimination. Exhibit 2, Interrogatory Response Number 10.

Without any direct evidence, Plaintiff must utilize the *McDonnell Douglas* burden-shifting method. *Jenks*, 495 F.Supp.2d at 527. Plaintiff must first establish a prima facie case of disparate treatment. *White v. BFI Waste Servs*, LLC, 375 F.3d. 288, 295 (4th Cir. 2004). Plaintiff must show that (1) he is a member of a protected class, (2) he was satisfactorily performing his job, (3) he suffered an adverse employment action, and (4) he was treated differently from similarly situated employees outside the protected class. *Id*. If Plaintiff establishes a prima facie case, Defendant must show that there was a valid reason for termination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510, 113 S.Ct. 2742, 2749 (1993). If Defendant shows that there was a valid reason for termination, Plaintiff must demonstrate that

---

[3] Exhibit 2 is the Declaration of Sean Perrin which attaches Plaintiff's March 29, 2022, responses to interrogatories.

the apparently valid reason was a pretext for discrimination. *Id.* Throughout the *McDonnell Douglas* test, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981).

Plaintiff is unable to establish a prima facie case because he cannot show that he was satisfactorily performing his job, and that similarly situated employees from outside the protected class were treated differently.

1. **PLAINTIFF CANNOT DEMONSTRATE THAT HE WAS SATISFACTORILY PERFORMING HIS JOB**

In analyzing whether Plaintiff was performing at a level that met Sheriff Whisenant's expectations, the focus is on Patel's performance when he was fired. *See Gates v. Caterpillar, Inc.,* 513 F.3d 680, 689 (7th Cir.20087) (noting that "[t]he proper inquiry mandates looking at [the employee's] job performance through the eyes of her supervisors at the time of her ... termination"); *Holtz v. Jefferson Smurfit Corporation*, 408 F.Supp.2d 193, 204 (M.D.N.C. 2006). After Sheriff Whisenant reviewed Captain Huntley's investigation, he determined that Patel's actions violated not only the Sheriff's Office policy on excessive force, but was also criminal. Whisenant Dec. ¶ 14.

A sheriff has "care and custody" of the jail in his county." N.C.G.S. § 162-

22. Detention officers are tasked with maintaining safety and security of inmates at the Jail. Whisenant Dec. ¶ 2. Using excessive force, like slamming an inmate into a cell door and wall without any penological interest, is not part of a detention officer's job. *Id*. at ¶ 15. Jailers have tough jobs in a tough environment. An elected Sheriff, however, can reasonably expect that despite taunts and threats by inmates, their jailers will act professionally and not let their emotions get the better of them by assaulting inmates.

While there is no doubt that Patel was a valued employee- as demonstrated by his promotions and raises- his actions on January 27, 2021, violated Sheriffs' Office policy and North Carolina law and he cannot demonstrate that he was satisfactorily performing his job.

### 2. **PATEL ALSO CANNOT DEMONSTRATE THAT SIMILARLY SITUATED EMPLOYEES RECEIVED MORE FAVORABLE TREATMENT**

In addition to failing to demonstrate that he was satisfactorily performing his job, Patel cannot show that similarly situated white employees were treated differently than him.

As the Fourth Circuit stated:

> The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed. The purpose of the prima facie requirement is therefore served and the requirement met upon a showing (1) that plaintiff engaged in

9

> prohibited conduct similar to that of a person of another race … , and (2) that discipline measures enforced against the plaintiff were more severe than those enforced against the other person").

*Moore v. City of Charlotte, NC*, 754 F.2d 1100, 1105-06 (4th Cir. 1985

To demonstrate that he is similarly situated with a comparator, Patel must show that they both (1) "dealt with the same supervisor," and (2) were "subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019). The misconduct of the proposed comparator must be similar enough to that committed by the plaintiff to ensure that courts do not "confus[e] apples with oranges. .... In other words, apples should be compared to apples." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (internal citations and quotations omitted). Notably, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)

In this case, Plaintiff claims that his comparators are: 1) "Officer Tyrone Maddox who was present at the incident where Plaintiff was attacked by an inmate;" 2) "Lt. Anderson, now Captain Anderson, beat a citizen in the head [and] [n]o disciplinary action was taken against him;" (3) "[i]n either 2018 or 2019, a Deputy pushed an inmate down the stairs and into a wall with handcuffs and shackles around

him, but no action was taken against the deputy"; (4) "In March of 2020, an officer and an inmate got into a fight during a cell search" where the officer made the first punch, but no action was taken against the officer; and (5) Lt. Massey injured an inmate in 2020, where the inmate received a scratch, but no action was taken against him. Exhibit 2, Interrogatory Responses 2, 4.

These conclusory assertions do not satisfy Plaintiff's burden. Patel offers no evidence that his comparators were not disciplined beyond his own speculation, nor is there any indication that they are comparable to Patel. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133–34 (4th Cir.2002) (no prima facie discharge case because plaintiff was "unable to advance proof that other employees who are not members of the protected class were treated differently than [plaintiff] under similar circumstances.")

Plaintiff's first comparator, Tyrone Maddox, does not even involve claims that an inmate was injured by Maddox. Maddox is only alleged to have been present at an incident, and there is no description of what Maddox did, or if he was disciplined or not. There is also no indication that the third and fourth comparators, the 2018-2019 incident, and the March 2020 incident, even occurred. Whisenant Dec. ¶ 21. Plaintiff cannot meet his burden by simply claiming that incidents happened, when there is no evidence that they actually did. *Bryant*, 288 F.3d. at 133-134.

11

Case 1:21-cv-00248-WCM   Document 20   Filed 11/11/22   Page 11 of 20

The other two comparators, Lt. Anderson and Lt. Massey, are not similarly situated to this case. In August 2019, Lt. Dylan Anderson was attempting to arrest an individual named Homer Cook for Cook's probation violation. Whisenant Dec. ¶ 18 Cook fled from arrest, and during the course of detaining Cook, Lt. Anderson struck Cook several times in the course of chasing him and arresting him. *Id*. Upon review of the video and incident reports, Sheriff Whisenant determined that unlike Patel's case, Lt. Anderson's statement matched the video. *Id*. Lt. Anderson also utilized the training he was taught in subduing Cook. *Id.* Patel was never trained to slam an inmate's head into a cell door and wall. *Id*. Last, the District Attorney opined that Lt. Anderson committed no crime. *Id*.

The Lt. Massey incident is also not comparable to this case. On October 6, 2020, detention officers Josh Foster and Steven Massey, instructed an inmate, Scott Devon Hemphill, to go to the shower instead of leaving the shower to talk with another inmate. *Id*. at ¶ 20. Massey gave Hemphill the chance to go take a shower or go to his room. *Id*. Hemphill then punched Massey in the mouth and Massey and Foster took Hemphill to the ground and handcuffed him. *Id*. The investigating supervisor and Sheriff Whisenant determined that this use of force was appropriate. *Id*.

12

Case 1:21-cv-00248-WCM   Document 20   Filed 11/11/22   Page 12 of 20

Plaintiff cannot meet his burden of demonstrating that he was treated differently by simply alleging that other employees were treated differently without any proof to support it. *See Jones v. Dole Food Co., Inc.*, 827 F. Supp. 2d 532, 549 (W.D.N.C. 2011) ("Speculative assertions that a defendant's real motivation was racially based is not enough to withstand summary judgment, and conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment."). Therefore, Patel has failed to prove a prima facie case of racial and national origin discrimination.

### B. EVEN IF PLAINTIFF CAN ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION, DEFENDANT CAN DEMONSTRATE THAT THERE WERE LEGITIMATE REASONS TO TERMINATE PLAINTIFF

Even if Patel can establish a prima facie case of age discrimination, Sheriff Whisenant can easily meet his burden of production to proffer evidence of legitimate reasons for Plaintiff's termination. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004), abrogated on other grounds by *Foster v. University of Maryland Eastern-Shore*, 787 F.3d. 243, 249 (4th Cir. 2015).

After receiving a complaint from Robinson's grandmother, Sheriff Whisenant reviewed the video and Captain Huntley's investigation. The video evidence showed Patel slamming Robinson's head into the cell door and wall. Whisenant Dec. ¶ 11. Based upon his review of the video and investigation, Sheriff Whisenant

13

determined that Patel's actions were in violation of the Sheriff's Office Use of Force Policy, 4.18, which provides that, "No deputy or detention officer is allowed to use physical force greater than reasonably appears necessary." Id. at ¶14. In addition to violating policy, Sheriff Whisenant determined that Patel's use of force was also potentially criminal. Whisenant Dec. ¶ 14. As a result, Patel was fired for assaulting an inmate, and violating the Sheriff's Office Policy on use of force, two legitimate reasons for termination. *See Evans v. Technologies Applications and Service Company*, 80 F.3d 954, 960 (4th Cir. 1996) (job performance is a "widely recognized as valid, non-discriminatory base[s] for any adverse employment decision.")

### C. **PATEL CANNOT DEMONSTRATE THAT HIS FIRING WAS A PRETEXT FOR UNLAWFUL DISCRIMINATION**

As Defendant has demonstrated that Patel's firing was lawful, Patel bears the ultimate burden to show that Defendant's explanations are pretextual or otherwise unworthy of credence. *Price*, 380 F.3d at 212. To establish pretext, Patel must show both that Defendant's explanation for his firing is false and that the real reason for the action is discrimination. *Vaughan v. The MetraHealth Companies, Inc.*, 145 F.3d 197, 202 (4th Cir. 1998). "The pertinent question in determining pretext if not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) (citations omitted.).

Several reasons compel the conclusion that there was no pretext in this case. First, Sheriff Whisenant was the same person who fired and hired Patel. "When the hirer and firer are the same individual, there is a powerful inference relating to the ultimate question that discrimination did not motivate the employer." *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991); *see also* Donohue & Siegelman, *The Changing Nature of Employment Discrimination Litigation,* 43 Stan.L.Rev. 983, 1017 (1991) ("One is quickly drawn to the realization that '[c]laims that employer animus exists in termination but not in hiring seem irrational.' From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'")

In *Jones*, *supra*, the plaintiff brought a Title VII race discrimination claim against his employer after he was fired for having a romantic relationship with a female employee. 827 F. Supp. 2d at 539. Dole discovered evidence that led it to believe that not only was plaintiff violating Dole's anti-fraternization policy for supervisors, but he repeatedly lied about such conduct to his supervisors. *Id*. at 547. The plaintiff argued that Dole's reason for firing him was pretext as Dole's true desire was to terminate him because he dated a white female. *Id*. at 548.

The court dismissed plaintiff's Title VII claims of racial discrimination because he did not produce any evidence to support his theory beyond his own

speculation. *Id.* at 548-549. The Court reasoned that in addition to plaintiff's pretext argument being unsupported by any evidence, a presumption arises in favor of defendants under *Proud v. Stone*, "that the adverse employment action is presumed not to be pretextual where the act was done by the same person who recently hired the plaintiff." *Id.* at 549.

Similar to the employer in *Jones*, who both hired and fired the plaintiff, Sheriff Whisenant hired Patel in 2016 and fired him in 2021 for assaulting and injuring an inmate. In addition to hiring him, Sheriff Whisenant allowed Patel to take his certification four times, after Patel failed the first three times. Patel's firing is presumed not to be pretextual where the firing was done by the same person who hired him. As the Court stated in *Jones*, "This presumption arises because it would defy logic for a person who is supposedly motivated by racial bias or prejudice to both hire a person in a protected class and then turn around and fire that same person." *Jones*, 827 F. Supp. 2d at 549.

Further, this presumption is supported by evidence that Sheriff Whisenant promoted Patel twice, from detention officer to corporal and from corporal to sergeant. Sheriff Whisenant even temporarily moved Patel into a lieutenant position while the current lieutenants at that time was out on medical leave. Each promotion came with a salary increase.

Second, Sheriff Whisenant consistently promoted Patel and gave him awards.

16

In *N. Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 142, 301 S.E.2d 78, 86 (1983), the North Carolina Supreme Court utilized the *McDonnell Douglas* burden-shifting scheme and concluded that the DOC rebutted the prima facie case by clearly articulating legitimate nondiscriminatory reasons for plaintiff's discharge. The Superintendent discharged Gibson (the jailer) for his failure to make proper checks throughout his shift and his failure to report a suspicious situation regarding the inmates who escaped did not answer when it was time for breakfast, before leaving work at the end of his shift. *Id*.

The plaintiff attempted to prove that the reasons given for his discharge were a pretext for discrimination by showing that DOC had not discharge a white employee for what plaintiff contended were acts of comparable seriousness. *Id*. The DOC showed that plaintiff was treated well during his term of employment. *Id*. The Superintendent who recommended plaintiff's discharge had initially written a letter recommending plaintiff for employment as he then considered plaintiff to be an excellent candidate. *Id*. DOC also showed that after his training, plaintiff was making steady progress in his job performance, having been rated a satisfactory employee in two separate evaluations. *Id*. The Court held that there was no evidence presented to show that plaintiff was involved in or discharged for his legitimate civil rights activities. *Id*.

In our case, Patel was promoted twice which resulted in salary increases, and

17

Case 1:21-cv-00248-WCM   Document 20   Filed 11/11/22   Page 17 of 20

even consideration for the Jail Captain position in the future. Whisenant Dec. ¶ 15. In addition to Patel's promotions and salary increases, Sheriff Whisenant honored Patel several times during his employment, including Burke County Sheriff's Office Officer of the Month in April 2018, and the Burke County Sheriff's Office Detention Officer of the Year for 2018, as well as a "Meritorious Award" in 2020 for Patel's dedication to the Sheriff's Office. *Id.* at ¶ 6. It is inconceivable that Sheriff Whisenant would hire Patel, give him four opportunities to certify as a detention officer, promote him two times, give him salary increases, and then terminate him due to racial and national origin animus.

Last, there was not a "sham" investigation when Sheriff Whisenant received the complaint from Robinson's grandmother. He tasked Captain Huntley and Major Hinceman to perform an investigation which consisted of review of incident reports, videos, and witness interviews. Indeed, based upon the same evidence that Sheriff Whisenant used to fire Patel, the State Bureau of Investigations recommended that an assault charge be filed against Patel. *Id.* at ¶ 16. The District Attorney's Office agreed and Patel was charged with assault. *Id.*

## IV. <u>CONCLUSION</u>

Under N.C.G.S. § 153A-103(1), "[e]ach sheriff….has the exclusive right to hire, discharge, and supervise the employees in his office." Patel seeks to have this Court, and, ultimately a jury, substitute its judgment for Sheriff Whisenant's

18

judgment in firing him. However, it is well recognized that courts do not sit as a "super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986). The issue in this case is not whether Patel's termination for assaulting an inmate was wise, fair, or even correct, but whether it was based on discrimination. *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir. 1988). It clearly was not.

If Patel's claim were allowed to proceed to trial, the Sheriff's Office would effectively be prohibited from terminating anyone. N.C.G.S. § 153A-103(2) would be rendered meaningless because a terminated employee could do exactly what Patel is doing: claim that they were fired when someone else of a different sex or race was not fired, despite the fact that the cases are completely different, and somehow hope a jury will disregard the law and believe that the firing was not justified. This Court should reject such an attempt.

Sheriff Whisenant is therefore entitled to judgment as a matter of law on Plaintiff's claims for race discrimination and national origin discrimination because Plaintiff failed to present any genuine issue of material fact as to his claims.

This 11th day of November, 2022.

                                      s/ Sean F. Perrin
                                      Sean F. Perrin (NCSB No. 22253)
Keisha Murray (NCSB No. 56249)
WOMBLE BOND DICKINSON (US) LLP
301 S. College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: 704-331-4992
E-mail: Sean.Perrin@wbd-us.com
E-mail: Keisha.Murray@wbd-us.com
*Counsel for Defendant Sheriff Steve Whisenant*